IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL ALLEN WOODYARD, | CASE NO. CV-F-04-6479 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| DAVID L. RUNNELS, Warden, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

PROCEDURAL BACKGROUND[1]

On July 11, 2002, in the Stanislaus County Superior Court Petitioner was convicted by a jury of assault by means of force likely to produce great bodily injury and battery with serious bodily injury. (CT 111.) Petitioner was sentenced to sixteen years in state prison.

Petitioner filed a timely notice of appeal to the California Court of Appeal for the Fifth Appellate District. The Fifth District Court of Appeal affirmed Petitioner's conviction and sentence.

Petitioner timely petitioned the California Supreme Court for review. The petition for review was denied on January 14, 2004.

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer.

1

## STATEMENT OF FACTS

Prosecution

On December 28, 2001, Petitioner was visiting Joshua Hassen at his apartment in Modesto. Edward Sweeten testified that on December 28, 2001, when he arrived home after work, he observed Joshua Hassen and Petitioner drinking alcohol, when Mr. Sweeten told Joshua that he kept screwing up and he was going to make his life hell. (RT 38.) Petitioner told Joshua "You got to handle your shit, you got to handle your shit." (RT 38.) Joshua told Petitioner "Forget it, don't worry about it." (RT 38-39.) Later that evening, Petitioner and Joshua went to Mr. Sweeten's apartment and told him they needed to talk. (RT 39.) Sweeten stepped outside the apartment and told Joshua "I don't think we got shit to talk about, man." (RT 41.) Before Sweeten could finish the sentence, Petitioner hit him in the face with a closed fist causing him to fall to the ground. (RT 42, 115-116.) Petitioner continued to punch Sweeten in the face with a closed fist, while Joshua kicked him. (RT 43, 115-116, 141, 143.) A neighbor subsequently intervened, got Joshua off of Petitioner, and Sweeten was able to immobilize Petitioner and detain him until the police arrived. (RT 46-47, 143-145.) Sweeten was treated for a severe laceration of his upper lip from the base of his nose to his upper lip, requiring suturing and a "three-layer repair," and a broken front tooth. (RT 48-49.)

Defense

Petitioner testified in his own defense. Petitioner testified that Sweeten had been attempting to engage Joshua Hassen in a fight for several weeks prior to the incident. (RT 245.) Petitioner stated that he and Joshua went to Sweeten's apartment to talk to him and Sweeten said "Let's go, let's do this" while maintaining a fighting stance (RT 246- 248.) Petitioner felt as though he was about to be hit by Sweeten, so he punched him in the face in an attempt to defend himself. (RT 249-250-252.) Petitioner continued to hit Sweeten in an attempt to get away from him. (RT 251.) After hitting Sweeten three times, he was tackled by Petitioner's neighbor. (RT 251.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.   Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather,

that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.  Trial Court's Refusal to Question Juror Regarding Observation of Petitioner in Physical Restraints

Petitioner contends that the trial court violated his due process right to a fair trial when it refused to inquire if any of the jurors observed Petitioner in chains and shackles.

A jury's observation of a defendant in custody may under certain circumstances "create the impression in the minds of the jury that the defendant is dangerous or untrustworthy" which can unfairly prejudice a defendant's right to a fair trial notwithstanding the validity of his custody status. Holbrook v. Flynn, 475 U.S. 560, 569 (1986). Because visible shackling during trial is so likely to cause a defendant prejudice, it is permitted only when justified by an essential state interest specific to each trial. Id. at 568-569. However, a jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom has not warranted habeas relief. Ghent v. Woodford, 279 F.3d 1121 (9th Cir. 2002); see also United States v. Halliburton, 870 F.2d 557, 560-561 (9th Cir. 1989); Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir. 1985). In Ghent v. Woodford, 279 F.3d 1121, the district court found that the defendant was transported to and from the courtroom in shackles and that on some of these occasions jurors observed defendant under such restraint. Id. at 1132. The jurors glimpsed Ghent as he walked in the hallway and stood at the doorway of the courtroom to have his restraints removed. Id. Despite its agreement with these factual findings, the

4

1 Ninth Circuit held that, "The jury's 'brief or inadvertent glimpse' of a shackled defendant is not
2 inherently or presumptively prejudicial, nor has Ghent made a sufficient showing of actual
3 prejudice." Id. at 1133.

4 Petitioner was not shackled while court was in session during the duration of the four-day
5 trial. (RT 273.) Thus, the only observation of Petitioner in shackles was during transportation
6 outside of the courtroom.

7 In the midst of the jury trial, one of the jurors may have inadvertently observed Petitioner in
8 shackles being transported to the courtroom. In response to the bailiff informing the trial judge that
9 one of the jurors may have observed Petitioner in shackles, the Court stated the following on the
10 record:

> THE COURT: And that fact was disclosed to the attorneys, and both defense attorneys have suggested it would be appropriate for me to inquire of that particular juror whether or not the juror in fact saw them, or recognized they were in shackles - - I don't know how you would do that - - but to further inquire whether or not that fact would in any way prejudice that juror. And the court has offered to admonish this jury that the defendants are in custody is not a fact that the jury should give any consideration in their deliberations, and it should in no way prejudice them against the defendants. It happens to be a fact they're in custody.
> I think that the attorneys declined that offer and so here we are. I'm going to allow them to make whatever record they want to make with regard to that. Unfortunately, the configuration of this courthouse is not such that we have a method of getting people from the jail to the courtroom, at least to this courtroom, unobserved. So those sorts of things happen.
> MR. MURY: Your Honor, the only thing I would add is I don't have such a concern of questioning the juror as to what he saw, or if he was able to see. I think we could probably get enough information from the bailiff.
> Did he come face-to-face? Did he look at the chains? Did he have any facial reaction?
> My request would have been a little modified from the other and that would have been to find that information out from the bailiff, and if it was sufficient that it was clear to her he did notice, to admonish that individual juror, as opposed to picking that juror out and making some kind of big deal to him. I do request the court not make the instruction of all the jurors - - or give instruction to all the jurors. I don't see any benefit to making any bigger deal than it was in that respect. My request has gone to that point of finding out from the bailiff during that whether any reaction that he noticed be made clear to us, "Yeah, he saw it and realized what was going on."
> THE COURT: Well, okay. I guess the record should disclose that we have this - - the courtroom is quite a distance from the holding area where the defendants are housed. And they come in through a tunnel from the jail to an area between departments ten and 12, and this is done at the other end of the hallway from that, and there is no way to get here except by down the hallway. And there has never been my policy to sequester jurors in any particular area or to order them to hold themselves out of view or to do anything of that sort, or to seat them in the jury box without the presence of everybody, and then have the bailiff go and get them, and have them to

|     |     |
| --- | --- |
| 1   | suddenly appear in the courtroom, that has never been my practice. |
| 2   | Further, I think the record should disclose there have been no extraordinary measures taken with regard to security in this courtroom because we have two defendants, we have - - most of the time we've had two bailiffs. Sometimes one |
| 3   | bailiff. Most of the time two bailiffs. And that the defendants are not shackled, as far as I know. |
| 4   | They are not shackled, are they? |
|     | MR. FOLEY: No. |
| 5   | MR. MURY: No. |
|     | THE COURT: No leg restraints? |
| 6   | MR. MURY: That's correct. |
|     | MR. FOLEY: That's correct. |
| 7   | THE COURT: No handcuffs? |
|     | MR. MURY: That's correct. |
| 8   | MR. FOLEY: That's correct. |
|     | THE COURT: Sitting at counsel table freely to converse with their attorneys, |
| 9   | as far as I know. |
|     | MR. MURY: Yes. |
| 10  | MR. FOLEY: Yes. |
|     | THE COURT: The only untoward occurrence is when the bailiff was bringing |
| 11  | him down. I can tell you the bailiffs do everything they can to try to bring them down at a time when they are not likely to be seen by jurors, but sometimes it happens. In |
| 12  | this case, one juror happened to see them. |
|     | [THE BAILIFF]: May I clarify that? |
| 13  | THE COURT: Sure, bailiff, go ahead. |
|     | [THE BAILIFF]: The hallway was clear and when we walked down the |
| 14  | hallway, the juror came out of the bathroom. |
|     | THE COURT: Did the juror make any remarks? |
| 15  | [THE BAILIFF]: He was behind us, so I don't know. |
|     | THE COURT: The juror was behind you as you proceeded down the hallway? |
| 16  | [THE BAILIFF]: Yes. |
|     | THE COURT: You came in the side door? |
| 17  | [THE BAILIFF]: Yes. |
|     | MR. FOLEY: If I may, this was in the afternoon after the lunch recess? |
| 18  | THE COURT: Yes. |
|     | MR. FOLEY: That juror would have presumably seen the defendants at |
| 19  | counsel table, made notation or would recall what in fact the individuals were wearing, so even the fact that they couldn't have seen them from the front would not |
| 20  | preclude the juror from being able to identify my client. |
|     | It was my request that we do inquire of the particular juror - - [w]hich I |
| 21  | believe was juror number four? |
|     | [THE BAILIFF]: Yes. |
| 22  | MR. FOLEY: If I may, this was in the afternoon after the lunch recess? |
|     | THE COURT: Yes. |
| 23  | MR. FOLEY: That juror would have presumably seen the defendants at |
|     | counsel table, made notation or would recall what in fact the individuals were |
| 24  | wearing, so even the fact that they couldn't have seen them from the front would not preclude the juror from being able to identify my client. |
| 25  | It was my request that we do inquire of the particular juror - - [w]hich I |
|     | believe was juror number four? |
| 26  | [THE BAILIFF]: Yes. |
|     | MR. FOLEY: Whether or not they noticed and/or recognized my client and if, |
| 27  | in fact, they did, inquire as to whether or not that created any problem for them in terms of prejudice. Whether or not they had shared that information with any of the |
| 28  | other jurors and then appropriately admonish that juror or have them leave the jury |

6

|   |   |
|---|---|
| 1 | and put the alternate on. |
|   | In light of the court's unwillingness to do that, I would for the record ask the |
| 2 | court to declare a mistrial. |
|   | THE COURT: Any comment by anyone else? |
| 3 | I'm ready to rule |
|   | Mr. Houston. |
| 4 | MR. HOUSTON: The only thing the People would add, according to bailiff, if |

1   and put the alternate on.
            In light of the court's unwillingness to do that, I would for the record ask the
2   court to declare a mistrial.
            THE COURT: Any comment by anyone else?
3   I'm ready to rule
    Mr. Houston.
4           MR. HOUSTON: The only thing the People would add, according to bailiff, if
    I may ask your bailiff a question or two in regards to what, if anything, the jurors saw.
5           Did you see the juror make eye contact or look down the hallway towards
    where you and the defendants were?
6           [THE BAILIFF]: I didn't see that.
            From his position he had ample opportunity to see leg irons and the belly
7   chains.  If he looked at us, he could have seen the belly chains and the leg irons.
            MR. HOUSTON: You don't know if he looked at all?
8           [THE BAILIFF]: I don't know if he looked.
            MR. HOUSTON: You didn't hear any comments?
9           [THE BAILIFF]: He said nothing.
            MR. MURY: For the record, I guess I will join that motion.
10          The only other thing, you came in the side door.  We are talking about five
    feet or so from the bathroom to the side doors?
11          [THE BAILIFF]: I think it is a little further than that.  A little further, I would
    say ten feet.
12          MR. MURY: You are talking about the bathroom at the end of the hallway
    connected to this courtroom and ten feet from the bathroom door into the door in the
13  hallway?
            [THE BAILIFF]: Yes.
14          MR. FOLEY: Could I also inform the court, my client has shared with me he
    made eye contact with the juror?
15          For the court's information.
            THE COURT: To do anything further, including to even interview that juror,
16  would be to cause an undue amount of attention to that - - to the circumstances of him
    being brought to the courtroom, and I'm not going to do that.  I think that alone might
17  tend to not only cause the juror to spend more time thinking about it, but it might
    cause the other jurors to want to know what was it that he just talked to the judge and
18  lawyers in private about.  That would get out also.  I would be glad to admonish the
    jury that the custodial status of these two defendants is not something they should
19  take into account or pay any attention to or discuss or let it enter into their
    deliberations.  I'll be glad to advise them to that fact.
20          If your position is correct, I would have to make any order to my bailiffs to the
    effect, from now on they may not under any circumstances ever bring a defendant to
21  my courtroom when it is such a condition that the jurors might see them.  That would
    be an order and I'm not quite prepared to do that.  I'm not going to create a situation
22  in this courthouse that every time that event might occur you have to have a sudden
    interrogation of jurors.
23          Maybe I should inquire of all 12 of them: "They've been brought up and down
    in chains and belly chains, have any of you seen that?"
24          How do you know that somebody else didn't see them at some other time
    through one of the windows or around the corner or whatever?  And we are five days
25  into this.  I think that maybe the inquiry would be necessary - - I was taking the
    extraordinary measures and then I would probably sui sponte advise the jury, if I had
26  12, with the bailiff, in my courtroom, lined against the wall with their hands on their
    pistols or something, or Tasers out, or something of that sort, I would have to do
27  something.  At this point I'm not going to make a point of it to the jury unless you so
    request.
28          Since you haven't, I won't.

7

    And your motion for mistrial is denied.
MR. MURY: Can I ask that question now?
THE COURT: Sure.
MR. MURY: As to the instruction to the jury, would the court indicate or do it separately or as part of the overall instruction at the end of the case?
THE COURT: I will do anything you want.
MR. MURY: Would the court reserve on that issue and let me look into that a little bit, whether I want the court to instruct? I would only want it to be done as part of the overall instructions. My concern is making this a bigger deal than it is.
THE COURT: Stick it in somewhere in the middle of the instructions. I will go that far for you.
MR. FOLEY: If we are going to do it?
THE COURT: I'll let you draw up the instruction, if necessary. In fact, I insist upon that.
(RT 270-277.)

    In rejecting Petitioner's claim on direct appeal, the Court of Appeal held that the record failed to establish that the juror actually observed Petitioner in shackles outside the courtroom and that even if Petitioner had established that the juror observed the shackles, the error was harmless.[2] (Opinion, at 2-3.)

    First, the state courts' determination that the record failed to establish that the juror outside the courtroom actually saw Petitioner in shackles, is not an unreasonable determination of the facts of the instant record. Further, Petitioner has failed to rebut the state court's factual finding by clear and convincing evidence. However, even assuming Petitioner's allegation is true that one of the jurors observed Petitioner outside the courtroom in shackles, Petitioner is not entitled to habeas corpus relief. There is no presumptive prejudice if members of the jury observe a defendant in shackles in the corridor being transported to and from court. Ghent v. Woodord, 279 F.3d at 1133; Castillo v. Stainer, 983 F.2d 145, 148 (9th Cir. 1992), *amended* 997 F.2d 669 (9th Cir. 1993); see also Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir. 1985). Petitioner has failed to make an affirmative showing of prejudice. Petitioner's allegation presents nothing more than a single jurors brief and inadvertent observation of Petitioner in shackles outside the courtroom. Further, as stated

---

[2] Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

by the Court of Appeal, the trial court offered to rectify any resulting prejudice by offering to admonish the jury that the fact that Petitioner was in custody was not a fact that the jury should give any consideration in their deliberations, and it should in no way prejudice them against the Petitioner.  Although defense counsel declined as he preferred that the trial court actually question the juror, the trial court's offered rectification was reasonable under the circumstances.  (See RT 301-302.)  Petitioner simply has not shown that a single jurors inadvertent observation of him in shackles outside the courtroom "had a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619 (1993).  The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of the facts in light of the state court record.  28 U.S.C. § 2254(d)(1), (2).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     February 27, 2006                       /s/ Dennis L. Beck
3b142a                                        UNITED STATES MAGISTRATE JUDGE